### HINCK v. BLOCK.

(Supreme Court, Appellate Division, Second Department. July 25, 1912 )

Appeal from Special Term, Kings County.

Action by Claus H. Hinck against Claus Block. From a judgment in favor of defendant, and from an order denying plaintiff's motion for a new trial, he appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

Arthur B. Hyman, of New York City, for appellant.
Adolph Feldblum, of Brooklyn (Philip Levison, of Brooklyn, on the brief), for respondent.

PER CURIAM. Judgment and order affirmed, with costs.

HIRSCHBERG, BURR, and CARR, JJ., concur. THOMAS, J., reads for reversal, with whom JENKS, P. J., concurs.

THOMAS, J. (dissenting). Defendant, a saloon keeper, applied for a license to traffic in liquors, and received the usual certificate of authority for the year beginning May 1, 1907. This action is to recover the certificate or its value. The plaintiff produced an assignment of it, purporting to be signed by the defendant, dated April 25, 1907, and acknowledged on that day before a notary public, which recites that the plaintiff "has advanced to me or laid out and expended for me certain moneys to enable me to pay the tax upon the issuing of such certificate and to procure such tax certificate." The defendant testified that he did not sign it, and the jury found for him upon such issue. The defendant was a customer of the Eurich Ft. Hamilton Brewery, and the certificate was procured by its interposition. The Brewery borrowed $18,000 of plaintiff, and the latter's attorney did what was done with the excise department, and took as security the certificates of the defendant and others.

If it could be inferred that the Brewery advanced money for the certificate, directly or through plaintiff, I think that the evidence of payment to them by defendant and receipt by them of the money to pay for the certificate would not tend to aid defendant's contention that he did not execute the assignment; for, in that case, the repayment of the money so advanced would be entirely consistent with the usual custom of assigning to the Brewery the customer's certificate, and would strengthen the probability that the assignment was made. But in the present case defendant's sole communication was with the Brewery. If he delivered an assignment, it was to it. Now, it appears from his evidence that he borrowed no money of the Brewery or other person, and the Brewery advanced no money for him. This appears, not only from his statement, but also from two checks, severally dated April 18th and 25th, given by defendant to the Brewery, and the latter's receipt for the money for the certificate. The last check and the receipts are dated on the day the assignment purports to be executed. If, now, the defendant paid cash for the certificate several days before it was issued, and so presumptively owed nothing for it, that fact indicates the improbability that defendant executed it, and is relevant evidence for that purpose. He would not, in usual expectation, assign the certificate for money advanced when none was advanced. So what the defendant and the Brewery did on April 25th in regard to the certificate is associated with the question whether an assignment was or was not made, and consequently whether he signed

his name to an assignment. And yet the verdict is against the weight of the evidence. The Brewery delivered the assignment to plaintiff's attorney to secure money borrowed to pay for this and other certificates. The defendant and the Brewery, to obtain the certificate and following a common custom, may have assigned the expected certificate in blank, whereby the Brewery was enabled to fill in the plaintiff's name and deliver it, perchance after it had received the money from defendant and hence wrongfully. The assignment is regularly acknowledged before a notary public, and it is not too much to say that his certification has the probative force that would be due to the testimony of a reputable and credible witness, with a clear remembrance of the event, a person in whose care and integrity the state had confidence for the discharge of an important duty. The conviction in legal theory caused by this official act is strengthened by the instant recognition of the resemblance of the signatures in the assignment to the defendant's conceded signatures in evidence. Opposed to this are the defendant's denials, somewhat halting and uncertain initially, aided by the documentary evidence tending to show that he had no occasion to make the assignments. There is no apparent reason for obscurity in this matter, and the question should be re-examined upon a new trial, which should be granted, costs to abide the event.

JENKS, P. J., concurs.